IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

TONY MARTINEZ,

    Plaintiff,

    v.

LONGS DRUG STORES, INC.,

    Defendant.

CIV-S-03-1843 DFL CMK

MEMORANDUM OF OPINION
AND ORDER

The parties bring cross-motions for summary judgment on plaintiff Tony Martinez's claims against defendant Longs Drug Stores ("Longs") under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 et seq., the California Disabled Persons Act, Cal. Civ. Code § 54, and the Unruh Civil Rights Act, Cal. Civ. Code § 51 et seq.

I.

Martinez, a 43-year old paraplegic who uses a wheelchair for mobility, visited the Longs Drug Store at 3338 Arden Way on August 27, 2003. (Pl.'s Mot. at 2.) On September 5, 2003, he

filed this suit. In his complaint Martinez alleges that, on his visit to the store, he encountered architectural barriers that denied him access. (Compl. ¶ 18.) The complaint does not specifically identify the barriers encountered but generally alleges that Longs: (1) failed to provide access at the entrance of the store; (2) failed to provide access to areas of the store where goods and services are made available to the public; and (3) failed to provide access to restroom facilities. (Id. ¶¶ 19-21.)

Martinez was deposed on August 6, 2004. During his deposition, he specifically described the barriers he encountered at Longs. These barriers include: (1) difficulty reaching toilet seat covers because the dispenser was too high; (2) difficulty with the latch on the accessible stall door in the bathroom; (3) difficulty maneuvering up to the sink in the bathroom because of a protruding pipe; (4) inability to open the bathroom door because it was too heavy; (5) inability to open the bathroom door because a garbage can was blocking the path of travel; (6) boxes in the aisles; (7) difficulty putting items on the checkstand counter because of its height; and (8) difficulty reaching the ATM point-of-sale machine at the checkstand. (Martinez Dep. at 30-32, 34, 48, 53, 58, 67-69.) Martinez testified that, to the best of his recollection, these were all the barriers he encountered at Longs.[1] (Id. at 47-48.)

---

[1] Martinez also testified that he had difficulty reaching the soap dispenser and paper towel dispenser in the bathroom, and that he could not use the water fountain, but these claims have

2

1      On August 10, 2004, plaintiff's expert, HolLynn D'Lil,
2 completed an accessibility report for the Arden Way Longs.
3 (Omansky Decl. Ex. S.)  The report identified 21 violations of
4 the ADA Accessibility Guidelines ("ADAAG"), 28 C.F.R. Pt. 36,
5 App. A, and the California Building Code ("CBC"), Cal. Code Regs.
6 tit. 24. (Id.)  D'Lil found violations as to all of the barriers
7 mentioned by Martinez in his deposition. (Id.)  The additional
8 violations she identified are: (1) lack of an international
9 symbol of accessibility at the entrance doors; (2) lack of smooth
10 bottom on the entrance doors; (3) inadequate strike-side
11 clearance on the exit doors; (4) the height of the pharmacy
12 counter; (5) the height of the film development counter; (6) the
13 height of the cosmetic counter; (7) insufficient knee space in
14 the blood pressure machine; (8) lack of braille on exit signs;
15 (9) excessive door pressure in the women's restroom; (10)
16 inadequate strike-side clearance in the women's restroom; (11)
17 the height of the toilet paper dispenser in the women's restroom;
18 (12) inadequate locking hardware in the accessible stall in the
19 women's restroom; and (13) excessive distance of the toilet from
20 the wall in the accessible stall in the men's restroom.  (Id.)
21 Martinez concedes that he was unaware of these violations prior
22 to the D'Lil report.  (Pl.'s Mot. at 6.)
23     The violations identified in the D'Lil report are listed in
24 the court's February 16, 2005 pretrial conference order as
25 "disputed factual issues" remaining in this suit.  (2/16/2005
26 _____

apparently been abandoned.  (Martinez Dep. at 30, 58-59.)

3

Order at 3-5.)  On March 3, 2005, the parties stipulated to the appointment of a neutral expert, Peter Mergen, to perform a site inspection.  (3/3/2005 Order at 1-2.)  The site inspection was performed on March 10, 2005, and Mergen completed his report on May 6, 2005.  (Omansky Decl. Ex. M.)

Longs moves for summary judgment on the grounds that: (1) Martinez suffered no injury in fact prior to filing his complaint; (2) Martinez cannot assert claims for barriers which he did not encounter or of which he did not have actual notice at the time he filed his complaint; and (3) all barriers as to which Martinez might have been entitled to relief either never existed or no longer exist, making claims for injunctive relief moot. (Def.'s Mot. at 3-4.)  Martinez cross-moves for summary judgment on the grounds that: (1) the evidence shows he was denied full access to the store; and (2) Longs has produced no evidence to support its affirmative defenses.[2]  (Pl.'s Mot. at 9-10.)

II.

A. Existence of an Injury in Fact

The jurisdiction of the federal courts is limited by the Constitution to the resolution of "cases" and "controversies."

---

[2] In response to plaintiff's motion, Longs indicates that it seeks to preserve only the following affirmative defenses: failure to state a claim under Cal. Civ. Code § 51; failure to state a claim; failure to mitigate damages; compliance with the ADA; lack of standing; alternative methods available; and isolated or temporary interruptions.  (Def.'s Reply at 4.) However, the validity of all of these affirmative defenses, many of which are not actually true defenses, can be adjudicated as part of this summary judgment motion.

4

U.S. Const. Art. III § 2, cl. 1. The constitutional standing requirements give effect to this limitation by ensuring that the exercise of judicial power is restricted to litigants who have been adversely affected by the action that they challenge. Valley Forge Christian Coll. v. Ams. United for Separation of Church and State, Inc., 454 U.S. 464, 473, 102 S.Ct. 752 (1982). In the context of this lawsuit, the standing requirements also serve the important goals of judicial efficiency and improvement of judicial decision-making. Grand Lodge of Fraternal Order of Police v. Ashcroft, 185 F.Supp.2d 9, 14 (D.C. Cir. 2001). Both of these goals suffer when the court reaches out to decide matters that did not affect the plaintiff in the suit before the court. The burden is on the party seeking jurisdiction to set forth facts sufficient to satisfy the Article III standing requirements. Whitmore v. Arkansas, 495 U.S. 149, 154-55, 110 S.Ct. 1717 (1990).

To establish Article III standing for injunctive relief, plaintiff Martinez must show: (1) he has suffered an "injury in fact" that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely that the injury will be redressed by a favorable decision. Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc., 528 U.S. 167, 180-81, 120 S.Ct. 693 (2000), quoting Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61, 112 S.Ct. 2130 (1992). These three requirements are not merely prudential or a

troublesome hurdle to be overcome if possible so as to reach the "merits" of a lawsuit; they are essential elements required for the invocation of the limited judicial power provided for in the Constitution. Valley Forge Christian Coll., 454 U.S. at 476.

The injury-in-fact element is considered by courts as the principal limitation imposed by Article III. Grand Lodge of Fraternal Order of Police, 185 F.Supp.2d at 14. Whether a plaintiff can prove an injury in fact is determined by the facts in existence at the time the suit was filed. Friends of the Earth, Inc., 528 U.S. at 170. To demonstrate a "concrete" or "particularized" injury, the plaintiff must show that he is affected in a personal and individual way. Pickern v. Holiday Quality Foods, Inc., 293 F.3d 1133, 1137-38 (9th Cir. 2002). In the context of an individual action alleging noncompliance with the ADA, it is the plaintiff -- and not some other hypothetical disabled person -- who must suffer an injury from the alleged noncompliance. Id. There are two ways a plaintiff may establish a concrete or particularized injury from ADA noncompliance: (1) he personally encountered the barrier complained of; or (2) he had actual knowledge of the barrier complained of and has been deterred from visiting the public accommodation because of that barrier. Id. at 1136-38.

While Martinez acknowledges that he did not encounter or have notice of any of the violations listed in the D'Lil report, beyond those identified in his deposition, he nonetheless asserts that he has standing to bring claims related to these

6

violations.³ (Pl.'s Reply at 7.) Martinez advances the theory that once he proves he has standing to bring one claim under the ADA, he has standing to seek removal of all barriers affecting his disability.⁴ Under this approach, if there is standing to bring a single claim, then the lawsuit, in discovery, becomes an audit of the entire facility and plaintiff may proceed to trial on all violations identified in the course of the litigation.

In support of his position, Martinez relies exclusively on a decision of the Eighth Circuit, <u>Steger v. Franco</u>, 228 F.3d 889, 893-94 (8th Cir. 2000), and a single sentence in <u>Pickern</u>, in which the Ninth Circuit states that, "[w]e agree with the Eighth Circuit [in <u>Steger v. Franco</u>] that Doran need not have encountered all the barriers that bar his access to the Paradise store in order to seek an injunction to remove those barriers."

---

³ Defendants also argue that Martinez cannot establish that he suffered an injury in fact prior to filing his complaint in 2003, citing deposition testimony in which Martinez states that he suffered a mental or emotional injury in 2004. (Def.'s Mot. at 8.) However, Martinez has produced a receipt indicating that he visited the store prior to filing his complaint. (Hubbard Decl. Ex. A.) Moreover, both the complaint and Martinez's declaration state that he visited the store and encountered the barriers discussed in his deposition prior to filing the complaint. (Compl. ¶ 18; Martinez Decl. ¶¶ 5-6.) Therefore, Martinez has established a concrete and particularized injury as to those barriers identified in his deposition testimony. Because he has expressed an intent to return to the Longs on Arden Way, he has established the necessary prerequisites of standing to seek injunctive relief as to these eight barriers.

⁴ Even Martinez concedes that he lacks standing to bring claims for violations unrelated to his disability or his gender, including the violations identified in the D'Lil report related to the women's restroom and the lack of braille on the exit signs. (Pl.'s Mot. at 10.) Therefore, summary judgment is GRANTED to defendants on these claims.

7

293 F.3d at 1138.

In Steger, the Eighth Circuit held that a blind plaintiff who attempted, but was unable, to gain access to a first-floor bathroom had Article III standing to seek removal of all barriers in the building related to his disability. 228 F.3d at 893-94. The court's justification for this holding was that it would be "inefficient" and "impractical" to limit injunctive relief to those barriers which the plaintiff actually encountered or had knowledge of at the time the complaint was filed. Id. If Steger were the law of this circuit, Martinez would have standing to bring the eight claims for barriers he neither encountered nor had notice of at the time of his complaint.

However, Pickern did not adopt Steger as the law of this circuit. The Pickern court was faced with a very different factual scenario than that presented in Steger and the present case. The plaintiff in Pickern actually encountered all of the barriers that he sought to remedy in his suit. 293 F.3d at 1135. The question for the court was whether he had to personally encounter the barriers within the year prior to filing his complaint in order to show a concrete and particularized injury. The court held that the plaintiff could establish an injury in fact by demonstrating that he knew of the barriers and was deterred from visiting during the statute of limitations period. Id. at 1137-38. The court discussed Steger only by way of general comparison. The court had no occasion to decide whether a plaintiff could have standing where the plaintiff neither

encountered nor knew of a particular barrier prior to filing the complaint.

Steger, therefore, is not binding and may be considered by the court for the strength of its argument. Upon examination, the rule articulated by the Steger majority is fundamentally incompatible with the constitutional standing principles discussed above. In support of its rule, the Steger court argues that, were the plaintiff unable to bring suit to remedy all violations, "numerous blind plaintiffs, each injured by a different barrier, would have to seek injunctive relief as to the particular barrier encountered. . . . This would not only be inefficient, but impractical." 228 F.3d at 894. The court's analysis distorts the function of the judiciary in our constitutional system and destroys the distinction between individual actions and class actions subject to the protections and requirements of Rule 23 of the Federal Rules of Civil Procedure.[5]

Moreover, the Steger court is incorrect that the

---

[5] The Steger majority also offers no rational distinction between violations related to a plaintiff's disability, which the plaintiff will be permitted to remedy even if he is not and will not be affected by those violations, and those violations related to other disabilities, which will go unremedied. This aspect of the holding also leads to piecemeal compliance -- the building will be accessible for the blind but not for the deaf or mobility-impaired. The most "efficient" system for ADA compliance would be to issue a single injunction to bring the entire building into compliance with all of the ADA requirements, but even the Steger court recognized that this was beyond the power of the court. 228 F.3d at 893. However, the court offers no reasoned explanation to differentiate between these two situations from a constitutional standpoint.

9

1 constitutional limits on the court's jurisdiction are
2 "inefficient." Judicial resources are not unlimited. The
3 court's resources are best spent resolving real issues that have
4 affected real people at the present time rather than reaching out
5 to decide matters that may not affect anyone or that may be
6 resolved without judicial action. In this case, at the time he
7 filed his complaint, Martinez was not aware of and had not been
8 affected by eight of the violations identified in the D'Lil
9 report. It follows that it is inefficient for the court to
10 expend its resources determining whether the conditions alleged
11 in the D'Lil report exist and, if so, whether those conditions
12 violate the applicable federal or state disability laws. In
13 short, a plaintiff in an ADA action does not, by the mere filing
14 of a lawsuit alleging one violation, obtain the right to perform
15 a wholesale audit of the defendant's premises. See Access Now,
16 Inc. v S. Fla. Stadium Corp., 1616 F.Supp.2d 1357, 1365 (S.D.
17 Fla. 2001) (holding that a plaintiff's mere entry into the
18 stadium did not automatically confer upon him a presumption of
19 injury from any and all architectural barriers in the stadium).
20 Nor does the filing of an ADA complaint by a single plaintiff
21 entitle plaintiff to proceed as if he were the representative of
22 a certified class of disabled persons.
23     Constitutional standing principles do not require that a
24 plaintiff actually encounter every barrier he seeks to remove.
25 However, the plaintiff must, at a minimum, know of, or have
26 reason to know of, and be deterred by, the barrier at the time

10

the complaint is filed in order to allege an injury from that barrier.[6] Here, Martinez could not reasonably infer the existence of the eight violations in the D'Lil report from the violations he actually encountered.  Four of the violations -- the International Symbol of Accessibility, the smooth bottom on the entrance door, the location of the toilet in the accessible stall, and the lack of knee space at the blood pressure machine -- are unlike any of the barriers actually encountered by Martinez at the time his complaint was filed.  Likewise, the claim as to the entrance door clearance is not sufficiently similar to Martinez's claim that the bathroom door lacked sufficient clearance, in that the doors are of different types, serve different purposes, and were allegedly blocked by different obstacles.  Finally, the claims related to the various counters throughout the store -- the cosmetics counter, the photo counter, and the pharmacy counter -- are not sufficiently related to Martinez's claim as to the height of the accessible checkstand,

---

[6] Knowledge of the barrier need not be direct, but can be circumstantial or inferential.  For instance, a plaintiff who encounters actual violations of the ADA in one hotel room or section of an arena at a public accommodation need not engage in the futile gesture of attempting to use other rooms or seats, if he has a reasonable belief that all rooms or seats are identical.  See Indep. Living Res. v. Or. Arena Corp., 982 F.Supp. 698, 762 (D.Or. 1997) (allowing plaintiff to remedy barriers not encountered because "it is unlikely that any plaintiff will ever sit in each of the seats or use each of the restrooms, or attempt to reach each of the ketchup dispensers. . ."); Pickern v. Best Western Timber Cove Lodge Marina Resort, 2002 WL 202442 at *4 (E.D. Cal. 2002) (permitting plaintiff to remedy violations in accessible rooms not visited).  However, a plaintiff cannot reasonably assume that because the parking lot of a public accommodation is inaccessible, the bathroom will be similarly inaccessible.

11

particularly in the absence of any evidence that all the counters throughout the store are of uniform heights.

Therefore, Martinez has only established an injury in fact as to the eight barriers he actually encountered: (1) difficulty reaching toilet seat covers because the dispenser was too high; (2) difficulty with the latch on the accessible stall door in the bathroom; (3) difficulty maneuvering up to the sink in the bathroom because of a protruding pipe; (4) inability to open the bathroom door because it was too heavy; (5) inability to open the bathroom door because of a garbage can in the strike-side clearance; (6) boxes in the aisles; (7) difficulty putting items on the checkstand counter because of its height; and (8) difficulty reaching the ATM point-of-sale machine at the checkstand. (Martinez Dep. at 30-32, 34, 48, 53, 58, 67-69.) The court, therefore, will reach the merits of only those claims. Summary judgment is GRANTED to defendants on all other claims.[7]

B. Existence of an ADA or CBC violation

The neutral expert determined that, of the conditions

---

[7] Martinez argues that the pretrial order superseded the original complaint, such that the relevant time for determining his standing to bring these claims is February 16, 2005, when the pretrial conference order was issued, at which time Martinez had knowledge of the barriers identified in the D'Lil report. (Pl.'s Mot. at 17.) While a pretrial order may, in some instances, serve to amend or clarify the pleadings, the inclusion of the violations identified in the D'Lil report as "disputed issues" was not intended to have that effect in this case. Indeed, the order identified the standing issue as a potential affirmative defense and all counsel understood that the standing issues addressed in this opinion had been preserved for later resolution by the court. (2/17/2005 Order at 10.)

12

1  identified, five of the eight were violations of the ADA: (1) the
2  toilet seat cover dispenser; (2) the under-sink pipe; (3) the
3  bathroom door pressure; (4) improper strike-side clearance; and
4  (5) merchandise in the aisles.  (Omansky Decl. Ex. M.)  Longs has
5  not presented any evidence to contradict these findings.
6  Therefore, Martinez has met his burden to show that he was denied
7  full and equal access to Longs on August 27, 2003 by the
8  existence of these barriers.
9      The remaining three claims are the subject of greater
10 dispute.  The two experts recorded very disparate measurements
11 for the height of the ATM point-of-sale machine, giving rise to
12 an inference that the ATM was relocated between the two visits.
13 (Id. Exs. M, S.)  At the lowered height, as measured by the
14 neutral expert, it is no longer in violation of the ADAAG or CBC.
15 (Id. Ex. M.)  As to the remaining two conditions, the bathroom
16 stall hardware and the height of the accessible checkstand, the
17 two experts reached differing conclusions as to the existence of
18 a violation.  (Id. Exs. M, S.)  In his deposition testimony,
19 Martinez stated that the accessible bathroom stall has a slide
20 latch.  (Martinez Dep. at 47.)  A sliding latch complies with the
21 ADAAG and the CBC.  28 C.F.R. Pt. 36, App. A § 4.13.9; Cal. Code
22 Regs. tit. 24 § 1133B.2.5.1.  Finally, in finding that the
23 accessible checkstand was in violation of the CBC, plaintiff's
24 expert relied on Cal. Code Regs. tit. 24 § 1122B.4, which governs
25 the height of work surfaces.  However, the more applicable
26 regulation, and the one relied on by the neutral expert, is Cal.

13

Code Regs. tit. 24 § 1110B.1.3, which specifically provides that the counter height of accessible checkstands cannot exceed 38 inches. The accessible checkstand complies with this regulation. Therefore, plaintiff fails to establish the violations advanced in these three claims.

### C. Remedy for Established Violations

Martinez has established that at the time he filed his complaint, he had encountered five violations of either the ADAAG or CBC. In suits by individuals, the ADA provides for a grant of injunctive relief "to the extent required" to make facilities accessible to individuals with disabilities. 42 U.S.C. § 12188(a). Injunctive relief is also authorized by the California Unruh Civil Rights Act. Cal. Civ. Code § 52©). However, Longs argues that injunctive relief is inappropriate in this action because it has voluntarily remedied the five violations after the complaint was filed. (Def.'s Mot. at 18; Kroll Decl. ¶ 4.) Given Longs's undisputed declaration that these violations have been fixed, injunctive relief is not required to ensure accessibility.

Martinez also seeks statutory damages under either Cal. Civ. Code § 52(a) or Cal. Civ. Code § 54.3(a). Martinez is entitled to the greater statutory damage amount of $4,000 under Cal. Civ. Code § 52(a). California Civil Code § 52(a) provides for $4,000 in damages for "each and every offense." Martinez contends that he is entitled to $4,000 in damages for each visit to the store, including the six visits that occurred subsequent to the

14

complaint. (Pl.'s Mot. at 21-23.) However, even if Martinez were correct that each visit is a separate offense, since he has neither sought nor been granted leave to amend the complaint, he is entitled to recover only for the August 27, 2003 visit. Therefore, his statutory damages come to $4,000.

## III.

For the reasons set forth above, plaintiff's motion for summary judgment is GRANTED as to his claim for statutory damages based on the following five ADA violations: (1) the toilet seat dispenser height; (2) the protruding under-sink pipe; (3) excessive bathroom door pressure; (4) improper strike-side clearance for the bathroom door; and (5) merchandise in the aisles. Plaintiff's motion is otherwise denied. Plaintiff is awarded $4,000 in statutory damages. Defendant's motion for summary judgment is GRANTED as to the remaining sixteen claims and as to the request for injunctive relief. Defendant's motion is otherwise denied. Because this order resolves all pending issues, except for attorney's fees, judgment shall enter.

IT IS SO ORDERED.

Dated: 8/25/2005

_[signature]_
_____
DAVID F. LEVI
United States District Judge

15