IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TONY MARTINEZ,<br><br>    Plaintiff,<br><br>    v.<br><br>LONGS DRUG STORES, INC.,<br><br>    Defendant. | CIV-S-03-1843 DFL CMK<br><br>MEMORANDUM OF OPINION<br>AND ORDER |

Plaintiff Tony Martinez moves for attorneys' fees in the amount of $34,967.06 following the disposition of his ADA suit against defendant Longs Drug Stores, Inc. ("Longs"). Longs challenges the reasonableness of the requested fee award. For the reasons discussed below, Martinez is awarded $11,972.47 in attorneys' fees and expenses.

I.

Martinez filed this suit on September 5, 2003 against Longs, Arden Way No. 2, LLC ("Arden"), and several unnamed defendants claiming that he "encountered architectural barriers that denied

1

him full and equal access" to Longs Drug Store #463 (the "store"). (Compl. ¶¶ 1, 18.) In the complaint, Martinez did not list the barriers that he encountered at the store. However, in his August 6, 2004 deposition, Martinez described eight specific barriers that allegedly hindered his access to the store. Four days later, Martinez's expert completed an accessibility report that identified twenty-one violations of the ADA Accessibility Guidelines ("ADAAG") at the store.

Martinez and Longs each moved for summary judgment on the twenty-one alleged violations. See Martinez v. Longs Drug Stores, CIV-S-03-1843 DFL CMK slip op. at 1 (E.D. Cal. Aug. 25, 2005). Martinez's motion was granted on five of the alleged barriers. Id. at 15. Longs' motion was granted on the other sixteen. Id. The summary judgment order disposed of all issues in the case except for an award of attorneys' fees. Id.

Martinez now moves for attorneys' fees in the amount of $27,196.25 and expenses in the amount of $7,770.81. (Mot. at 4.) Longs opposes the motion. The matter was submitted on the papers.

II.

The ADA provides that a court "in its discretion, may allow the prevailing party . . . a reasonable attorney's fee, including litigation expenses, and costs." 42 U.S.C. § 12205. A prevailing party under this statute "should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust." Barrios v. Cal. Interscholastic Fed'n, 277 F.3d

1128, 1134 (9th Cir. 2002). A prevailing party may also recover reasonable fees and costs after succeeding on a claim under the Unruh Civil Rights Act. Cal. Civ. Code § 52; <u>Engel v. Worthington</u>, 60 Cal. App. 4th 628, 632 (1997).

Calculating an appropriate fee award involves a two-step process. <u>Fischer v. SJB-P.D. Inc.</u>, 214 F.3d 1115, 1119 (9th Cir. 2000). "First, the court must calculate the 'lodestar figure' by taking the numbers of hours reasonably expended on the litigation and multiplying it by a reasonable hourly rate." <u>Id.</u> Certain factors should be taken into consideration when calculating the appropriate lodestar figure.[1] "Second, a court may adjust the lodestar upward or downward using a 'multiplier' based on factors not subsumed in the initial calculation."[2] <u>Van Gerwen v. Guarantee Mut. Life Co.</u>, 214 F.3d 1041, 1045 (9th Cir. 2000). However, a multiplier should only be awarded "in rare and exceptional cases." <u>Id.</u> (citations omitted).

Longs challenges the request for attorneys' fees on the

---

[1] The lodestar analysis includes the following factors: (1) the novelty and complexity of the issues; (2) the special skill and experience of counsel; (3) the quality of representation; (4) the results obtained; and (5) the contingent nature of the fee agreement. <u>Morales v. City of San Rafael</u>, 96 F.3d 359, 364 n.9 (9th Cir. 1996).

[2] These factors include: (1) the time and labor required; (2) the skill requisite to perform the legal services properly; (3) the preclusion of other employment by the attorney due to acceptance of the case; (4) the customary fee; (5) time limitations imposed by the client or the circumstances; (6) the undesirability of the case; (7) the nature and length of the professional relationship with the client; and (8) awards in similar cases. <u>Morales</u>, 96 F.3d at 364 n.8.

3

following grounds: (1) Martinez is not a prevailing party; (2) Martinez failed to make an attempt at conciliation; (3) fees prior to the dismissal of Arden should be reduced by 50%; (4) Martinez seeks to recover for the same costs twice; (5) Martinez was only partly successful; (6) Martinez rejected meritorious settlement offers; (7) the rate for Martinez's counsel is excessive; (8) Martinez should not be reimbursed for his attorneys' travel time to and from Sacramento; (9) Martinez should not be reimbursed for using an attorney from Chico, California to depose an expert in San Diego, California; (10) Martinez's expert fees are unreasonable; and (11) Martinez seeks reimbursement for overhead costs not properly taxed as fees.

A.  Prevailing Party

Longs argues that Martinez is not a prevailing party because: (1) he only succeeded on five of his claims; and (2) the court denied injunctive relief under the ADA.  (Opp'n at 4.) Martinez argues that he prevailed on his damages claim because he was awarded $4,000 and he prevailed on his claim for injunctive relief under the "catalyst theory."  (Reply at 5.)

"[A] plaintiff 'prevails' when actual relief on the merits of his claim materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff."  Farrar v. Hobby, 506 U.S. 103, 111-12, 113 S.Ct. 566 (1992).  A plaintiff who obtains an enforceable judgment for damages of any amount is a prevailing party.  Id. at 112-13.

4

Martinez is the "prevailing party" because he obtained a judgment against Longs for $4,000. Therefore, he is entitled to recover a reasonable attorney fee on this ground alone, and it is not necessary to consider the catalyst theory.

B. Attempt at Conciliation

Citing Doran v. Del Taco, Inc., 373 F.Supp.2d 1028 (C.D.Cal. 2005), Longs asserts that Martinez's failure to attempt a pre-litigation conciliation bars him from recovering attorneys' fees. (Opp'n at 5.) However, the ADA does not require plaintiffs to engage in such pre-litigation efforts. See White v GMRI, CIV-S-04-0465 DFL CMK slip op at 4 n. 3 (E.D. Cal. Aug. 19, 2005). Therefore, Martinez's failure to notify Longs before filing suit will not affect his award of attorneys' fees.

C. Fees Prior to Dismissal of Arden

Martinez filed suit against both Longs and Arden. Longs argues that Martinez is only entitled to fees incurred in prosecuting the action against it. (Opp'n at 6.) Therefore, Longs requests that the court: (1) strike all charges exclusively related to defendant Arden; and (2) reduce by 50% the fees and expenses generated before Arden's May 20, 2004 dismissal. (Id. at 7.)

Longs is not required to pay Martinez for expenses that are related exclusively to claims against Arden. However, with the exception of the $55.00 cost of serving Arden, the record reveals that Martinez only seeks fees for those expenses that he would have incurred even if Longs had been the sole defendant.

5

Therefore, Longs' request for a 50% blanket reduction is denied. The award will be reduced by $55.00.

D. <u>Double-Recovery</u>

Longs argues that Martinez has listed as "expenses" $1,234.19 in charges which have already been taxed as "costs." (<u>Id.</u>)  Martinez concedes the point.  (Reply at 3.)  The fee award will be reduced by $1,234.19 to prevent double-counting these expenses.

E. <u>Martinez's Success</u>

Longs asserts that any fee award should be reduced by 76% because Martinez only succeeded on five of his twenty-one claims. (Opp'n at 7-8.)  Martinez contends that such a reduction is not warranted because he received all of the relief to which he was entitled.  (<u>Id.</u> at 11-12.)

In determining the lodestar figure, courts must consider the "results obtained" in the litigation, especially where a plaintiff did not succeed on some of his claims.  <u>Schwarz v. Sec'y of Health & Human Servs.</u>, 73 F.3d 895, 901 (9th Cir. 1995). When a plaintiff fails to obtain all of the relief sought, courts use the following two-part analysis to determine whether a reduction in the fee award is appropriate:

> First, the court asks whether the claims upon which the plaintiff failed to prevail were related to the plaintiff's successful claims.  If unrelated, the final fee award may not include time expended on the unsuccessful claims.  If the unsuccessful and successful claims are related, then the court must apply the second part of the analysis, in which the court evaluates the significance of the overall relief obtained by the plaintiff in relation to the

6

> hours reasonably expended on the litigation.  If the plaintiff obtained excellent results, full compensation may be appropriate, but if only partial or limited success was obtained, full compensation may be excessive.  Such decisions are within the district court's discretion.

Id. at 901-02.  In determining whether the unsuccessful and successful claims are related,

> the test is whether relief sought on the unsuccessful claim is intended to remedy a course of conduct entirely distinct and separate from the course of conduct that gave rise to the injury on which the relief granted is premised.  The focus is on whether the unsuccessful and successful claims arose out of the same "course of conduct."

Id. at 903.  If a court finds that the successful and unsuccessful claims are unrelated, it may either identify specific hours that should be eliminated or simply reduce the award to account for the limited success.  Id. at 904.

Martinez succeeded on five of his twenty-one claims.  The remaining sixteen claims are not related to the five; each is a distinct alleged violation requiring separate evidence.  See White, CIV-S-04-0465 slip op. at 11-12 (finding that "alleged violations are premised on different facts and require the application of different sections of the ADA Accessibility Guidelines to determine liability."); Hooper v. Calny, Inc., CIV-S-03-0167 DFL GGH slip op. at 10 (E.D. Cal. Apr. 22, 2005)(same).  Therefore, the award must be reduced to reflect Martinez's limited success.

The time records Martinez provided are not sufficiently detailed to enable the court to match each entry to the

7

corresponding claims. Therefore, the court elects to reduce the lodestar amount by a percentage that corresponds with Martinez's success. See Hensley v. Eckerhart, 461 U.S. 424, 436-37, 103 S.Ct. 1933 (1983) (recognizing this approach). Because Martinez succeeded on so few of his claims, the court finds that a significant reduction is in order. Based on a review of the entire record and the recognition that some of the requested fees would have been incurred even if Martinez had only brought the five claims upon which he was successful, the court finds that a 2/3 reduction of the fee award will appropriately account for Martinez's limited success.

F.   Rule 68 Offers

Longs alleges that Martinez declined two "exceedingly reasonable Rule 68 offers," one on June 12, 2004 and the other on March 24, 2005. (Opp'n at 8.) The June offer was for $5,001.00, and the March offer was for $15,001.00. (Id.) As a result, Longs argues that it should not be charged fees or costs after June 12, 2004, or, at the latest, March 24, 2005. (Id.) Martinez argues that Rule 68 only cuts off an entitlement to fees when the applicable statute defines costs to include fees. (Reply at 8.)

Rule 68 provides that a plaintiff must pay the costs incurred after a Rule 68 offer was made if he: (1) rejects a timely pretrial settlement offer; (2) prevails on the merits; and (3) recovers less than the offer. See Gudenkauf v. Stauffer Communications, Inc., 158 F.3d 1074, 1083 (10th Cir. 1998).

8

However, Rule 68 only applies to attorneys' fees "where the underlying statute defines 'costs' to include attorney's fees." Marek v. Chesny, 473 U.S. 1, 9, 105 S.Ct. 3012 (1985). Neither the ADA nor applicable California law define costs to include attorneys' fees. See 42 U.S.C. § 12205; Cal. Civ. Code §§ 52, 54.3. Therefore, Rule 68 does not operate to cut off Martinez's entitlement to fees in this case.

G.   Rates

Martinez requests the following rates for his attorneys and paralegals: (1) $250 per hour for attorney Lynn Hubbard; (2) $175 per hour for Hubbard's associate; and (3) $75 per hour for Hubbard's paralegals. Longs challenges the rate of $175 per hour for Hubbard's associate, arguing that he should be compensated at $150 per hour instead. (Opp'n at 9.)

The reasonable rate in this district for Hubbard's associate is $150 per hour. Hooper, CIV-S-03-0167 slip op. at 6; Sanford v. Thrifty Payless, Inc., 2005 WL 2562712 (E.D. Cal. Oct. 11, 2005); Loskot v. USA Gas Corp., CIV-S-01-2125 WBS KJM (E.D. Cal. Apr. 26, 2004); Loskot v. Pine St. Sch., CIV-S-00-2405 DFL JFM (E.D. Cal. Nov. 7, 2002). Martinez provides no evidence other than Hubbard's associate's declaration to justify a rate of $175 per hour for Hubbard's associate. Specifically, he provides no affidavits from other lawyers in the region stating that $175 per hour is the appropriate rate for someone of Hubbard's associate's skill and experience. Because Martinez has failed to demonstrate why Hubbard's associate is entitled to bill at $175 per hour, the

9

court will use a rate of $150 per hour to calculate his fee award.

H.   Travel Time to Sacramento

Longs argues that Martinez's request for reimbursement for Hubbard's travel time to and from Sacramento should be denied. (Opp'n at 10.)  Martinez claims that this is time that would ordinarily be billed to a paying client and therefore should be approved.  (Reply at 10.)

Other judges of this court have held that the defendant is not "required to shoulder [Hubbard's] travel expenses to and from Sacramento" because Hubbard has filed hundreds of cases in Sacramento and it appears that he maintains his office in Chico for his own convenience.  See Sanford, 2005 WL 2562712 at *3; USA Gas, CIV-S-01-2125 slip op. at 15.  Moreover, the attorney fee rates that Hubbard claims are those for Sacramento, not those for a Chico practitioner whose normal work consists of appearances in the courts of Butte County.

Hubbard's associate avers in his declaration that, "on those occasions where we have paying clients" Hubbard charges them for travel time.  (S. Hubbard Decl. ¶ 23.)  Assuming that the Hubbards have "paying clients" and that they charge them for travel time, this does not justify shifting these expenses to Longs.  A paying client who hires the Hubbards can negotiate travel expenses up front.  If the client objects to Hubbard's request for $700 in fees per trip to Sacramento, then the client can seek representation elsewhere.  Longs did not have this

10

choice. Instead, according to Martinez, Longs is forced to pay for his attorneys' travel time to and from Sacramento regardless of where the attorneys reside.

The Ninth Circuit held in <u>Davis v. City and County of San Francisco</u>, 976 F.2d 1536, 1543 (9th Cir. 1992), that "[t]he touchstone in determining whether hours have been properly claimed is reasonableness." The Hubbards have filed hundreds of cases in this district. Their law business is the filing of ADA lawsuits, and their principal place of business is Sacramento. They claim Sacramento rates. However, they choose to live in Chico. The court finds that it is unreasonable for the Hubbards to charge their adversaries for their travel time to and from Sacramento when they generate such a large volume of litigation here. Therefore, Martinez's award for attorneys' fees will not include the eight hours Hubbard billed for traveling between Chico and Sacramento.

I.   <u>San Diego Deposition</u>

Martinez hired a "contract attorney" located in Chico to depose Longs' San Diego-based expert. Longs argues that Martinez should not be compensated for this attorney's travel time because Martinez could have contracted with an attorney in San Diego. (Opp'n at 10.) This argument is unpersuasive.

Longs knew that it was dealing with a Chico-based attorney when it hired Evans as its expert witness. It should have anticipated that Martinez's deposition of Evans would require an attorney from Chico to travel to San Diego. Martinez's choice to

11

contract this deposition out to a Chico-based attorney, rather than have Hubbard take the deposition is irrelevant. The fees for the contract attorney will not be reduced.

J.   Expert Fees

Longs challenges Martinez's request for fees related to A.C.C.E.S.S.'s preliminary site inspection and HolLynn D'Lil's subsequent site inspection and report. (Opp'n at 11.)

   1.   Preliminary Inspection

Martinez seeks to recover $450.50 for the preliminary site inspection and $250 for the time Hubbard spent reviewing the ensuing report. Longs argues that no fees should be awarded for the preliminary site inspection because it was "premature, yielded no value to the case, and was inconsistent with Plaintiff's testimony and the expert report." (Id.) Martinez argues that the site report was part of a "Rule 11 due diligence check" required by Hubbard. (Hubbard Decl. at 7.) According to Hubbard, the report and photos are necessary to "confirm that the barriers at the facility are both present and substantial." (Id.) Although Hubbard notes that such a report is not legally required, he states that it is a personal requirement. (Id.)

Hubbard's desire to check the facts before filing suit is understandable. However, requiring Longs to reimburse him for the expense of hiring an expert to make a preliminary inspection of the store is unreasonable. This inspection provided no material benefit to the case because: (1) it was superseded by Martinez's expert's report and again by the neutral expert's

12

report; and (2) Martinez lacked standing to bring claims for all but two of the fifteen barriers identified by the inspection. Furthermore, in addition to the $250 Hubbard billed for reviewing the report, he billed $250 for his own time spent inspecting the store.  The court finds that Martinez's request to award fees for both Hubbard's own inspection and the time Hubbard spent reviewing the inspection report is unreasonable.

The court will award Martinez for the time Hubbard spent inspecting the store.  However, Martinez will receive no award for the preliminary inspection by A.C.C.E.S.S. or the hour Hubbard spent reviewing the report.

2. D'Lil's Inspection and Report

Longs also challenges the $1,328.75 charged for the site inspection and expert report prepared by D'Lil.  (Opp'n at 11.) D'Lil charged $175 per hour for the site inspection and the ensuing report.  (Hubbard Decl. Ex. C.)  She billed one hour for the survey and 5.25 hours for the report.  (Id.)  She also billed $95 for one hour of travel to and from the store, $52.50 for one hour of her "survey assistant's" time, and $87.50 for one hour of her "survey assistant for photos'" time.  (Id.)

Longs argues that the charge should be reduced because D'Lil reported on twenty-one barriers, only five of which Martinez succeeded on.  The court agrees.  Because the time spent inspecting and reporting on sixteen of the twenty-one alleged barriers did not contribute to Martinez's recovery from Longs, the amount awarded for all expenses but the travel time will be

13

reduced by 76%.  This yields an award of $391.10 for D'Lil's site inspection and report.

K.   Unreasonable Charges

Finally, Longs argues that awarding fees for the following charges would be unreasonable: (1) paralegal work that was secretarial in nature; (2) calendar reviews and meetings by support staff; (3) work conducted before Martinez was injured; and (4) the generation of boilerplate documents.

1.   Paralegal Work

Longs argues that it is unreasonable for Martinez to request fees at paralegal rates for time spent filing and serving documents because those are secretarial tasks.  (Opp'n at 11-12.) Martinez claims that all of the paralegal time for which he seeks an award was spent on work that was appropriate for paralegals. (Reply at 12.)

In his declaration, Hubbard's associate describes paralegal work as drafting complaints, preparing joint status reports, propounding discovery, and preparing motions, statements, and expert disclosures.[3]  (Scott H. Decl. ¶¶ 29-30.)  He does not

---

[3] This description is in-line with that provided by the U.S. Department of Labor.  In its Occupational Outlook Handbook, the Labor Department describes paralegal work as follows:

> One of a paralegal's most important tasks is helping lawyers prepare for closings, hearings, trials, and corporate meetings.  Paralegals investigate the facts of cases and ensure that all relevant information is considered.  They also identify appropriate laws, judicial decisions, legal articles, and other materials that are relevant to assigned cases.  After they analyze and organize the information, paralegals may

14

mention the appropriateness of having paralegals serve or file documents.

In Missouri v. Jenkins, 491 U.S. 274, 288 n. 10, 109 S.Ct. 2643 (1989), the Supreme Court stated that "purely clerical or secretarial tasks should not be billed at a paralegal rate, regardless of who performs them." The Ninth Circuit interpreted this statement as allowing prevailing plaintiffs in fee-shifting actions to recover fees for secretarial services. Burt v. Hennessey, 929 F.2d 457, 459 (9th Cir. 1991).

The court finds that filing and serving documents are secretarial tasks that cannot be billed at a paralegal rate, regardless of who performs them. Martinez has the burden of establishing a reasonable rate for such activity. The rate cannot be the same as that charged for paralegal work. Missouri, 491 U.S. at 288 n. 10. Because Martinez failed to establish a

---

prepare written reports that attorneys use in determining how cases should be handled. Should attorneys decide to file lawsuits on behalf of clients, paralegals may help prepare the legal arguments, draft pleadings and motions to be filed with the court, obtain affidavits, and assist attorneys during trials. Paralegals also organize and track files of all important case documents and make them available and easily accessible to attorneys.
    In addition to this preparatory work, paralegals also perform a number of other vital functions. For example, they help draft contracts, mortgages, separation agreements, and trust instruments. They also may assist in preparing tax returns and planning estates.

See Bureau of Labor Statistics, Occupational Outlook Handbook, available at http://www.bls.gov/oco/ocos114.htm. Filing and serving documents appear to be tasks for which paralegals are overqualified.

reasonable rate for this time, the court denies his request for fees for the 8.2 hours of time a paralegal spent filing and serving various documents.

### 2. Calendar Reviews and Meetings

Longs argues that the thirteen billing entries described as "Meet with calendar clerk re Review and update calendar" are improperly billed meetings between support staff. (Opp'n at 12.) It requests that all time charged for these meetings be cut from the fee award. The court finds that it is reasonable for a legal professional to keep the calendar clerk informed of developments in the case.

However, a paralegal billed eighteen minutes for nine of these meetings and ninety minutes for one. This length of time is too long for a legal professional to spend updating a calendar clerk. Therefore, the court will exercise its discretion and reduce the time awarded for these meetings to .2 hours per meeting. As a result, the award for paralegal time will be reduced by 2.2 hours.

Longs also challenges the charges for support staff "meetings" and a fax that a paralegal sent to Hubbard on 2/01/05. (Id. at 13.) This objection is unfounded. Only a few time entries could be construed as meetings for support staff, and the records reflect that only one person billed time for each alleged meeting. The court finds that these entries are reasonable and denies Longs' request to strike them from the award.

Billing a paralegal's time to send a fax to a partner is

16

unreasonable. This is secretarial work and, as discussed above, should be billed at a lesser rate. Again, Martinez has failed to satisfy his burden of producing a reasonable rate for such work. Therefore, the .3 hours of paralegal time will be removed from the award.

### 3. Pre-injury Work

Longs argues that all work prior to Martinez's visit to the store should be removed from the fee award. (Id. at 12.) Martinez argues that the August 27, 2003 visit to the store was not his first and that he initiated discussions with his attorneys about the case in early August. (Reply at 10.)

A review of the billing records reveals that Martinez's attorneys and paralegals billed 8.1 hours before filing the complaint. (Lynn H. Decl. Ex. B.) This included conducting conflict checks and the site inspection, reviewing the inspection report, reviewing the client file, drafting the complaint, etc. (Id.) Other than reviewing the inspection report (as discussed above), these charges appear reasonable. There will be no further reductions to fees incurred before Martinez filed the complaint.

### 4. Boilerplate Documents

Longs argues that the court should strike from the award the time spent generating the following documents: the complaint, the settlement package, the joint status reports, the request for admissions, the interrogatories, the request for documents, the disclosure of D'Lil, the notice of taking depositions, the joint

17

1  pretrial statement, and the motion for attorneys' fees and costs.
2  (Opp'n at 12-13.)  Longs avers that these documents had already
3  been developed for use in one or more of the hundreds of ADA
4  cases that Hubbard has previously filed, at least thirty of which
5  involved Martinez as the plaintiff.  (Id.)  The court agrees.

6      Generating these boilerplate documents is "a mere
7  secretarial task" which cannot be billed at an attorney or
8  paralegal rate.  White, CIV-S-04-0465 slip op at 8.  The court
9  will strike from the award: (1) the .80 hours Hubbard billed for
10 generating the settlement demand letter; (2) the four hours
11 Hubbard billed for overseeing the preparation of discovery
12 requests; (3) the 1.4 hours billed by Hubbard's associate for
13 preparing the proposed joint status report; (4) the 1.5 hours
14 Hubbard billed for the "Disclosure of Plaintiff's Expert HolLyn
15 D'Lil"; and (5) the .70 hours Hubbard billed to "Oversee
16 preparation of Plaintiff's Notice of Taking Deposition."  The
17 court also strikes three of the four hours Hubbard billed for
18 preparing the Final Joint Pretrial Statement and five of the six
19 hours spent preparing the Plaintiff's Motion for Attorney's Fees,
20 Costs, and Litigation Expenses because each of these documents
21 should have been created in less than one hour.
22 ///
23 ///
24 ///
25 ///
26 ///

18

III.

Martinez is entitled to recover a reasonable attorneys' fee. Based on the foregoing, the court awards Martinez $4,953.00 in attorneys' fees, calculated as follows:

| Attorneys/Paralegals | Hours | Rate | Total |
| --- | --- | --- | --- |
| Lynn Hubbard | 72.80 | $250 | $18,200.00 |
| Scott Hubbard (Associate) | 4.45 | $150 | $ 667.50 |
| Paralegals | 23.60 | $75 | $ 1,770.00 |
| **Sub-Total:** | | | $20,637.50 |
| Negative Multiplier (2/3): | | | $ 6,879.00 |

In addition, the court awards Martinez $5,093.47 in litigation expenses. This represents the amount Martinez requested less: (1) the amount recovered as costs; (2) the cost of serving Arden; (3) the cost of the preliminary site inspection; and (4) the adjustment to D'Lil's expert report.

In total, the court awards Martinez $11,972.47 in attorneys' fees and expenses.

IT IS SO ORDERED.

Dated: 11/28/2005

_____
DAVID F. LEVI
United States District Judge